MULTNOMAH COUNTY et al. v. OREGON NAT. BANK et al.

(Circuit Court, D. Oregon. June 1, 1894.)

No. 2,091.

BANKS AND BANKING—INSOLVENCY—PREFERENCE—COUNTY—TRUSTS.

A county whose funds are deposited in a bank that fails has no preference over other depositors, as to the bank assets, where the identity of the funds deposited by the county has been lost. San Diego Co. v. California Nat. Bank, 52 Fed. 59, disapproved.

Action by the county of Multnomah and the city of Portland against the Oregon National Bank and W. W. Catlin, its receiver.

C. A. Dolph and John H. Hall, for Multnomah county.

G. W. Hazen, for city of Portland.

F. V. Holman and John M. Gearin, for defendants.

BELLINGER, District Judge. This is a suit to decree certain deposits of money made by the sheriff in the bank to be the property of the county, that such bank and its receiver hold the same as trustees for the benefit of the county, and that the county have a lien upon all the moneys, choses in action, and other property in said bank to the amount of $149,280.05, the aggregate of the

deposits so made. The city of Portland intervened as a complainant, praying like relief with the county, to secure the sum of $14,574.65 of its funds, deposited in the bank by the city treasurer. Answers were filed to these complaints, all the material portions of which are excepted to.

The vital question presented by these exceptions is the question, can the county and city whose funds have been wrongfully commingled with the funds of the bank, and paid out, secure a preference over other creditors or a lien on the property of the bank in the hands of an assignee? It is settled that a person may follow and reclaim his property, wrongfully appropriated by another, so long as he can find it. If its form has been changed, he may follow the substantial equivalent of his property, in whatever form. The property into which his own has been changed is impressed with a trust in his favor. But the great weight of authority is against any extension of the rule beyond this. The cases most relied upon by the complainants were those in the supreme court of Wisconsin, but, since the argument, defendant has called my attention to the case of Silk Co. v. Flanders (decided in the supreme court of Wisconsin in March of this year) 58 N. W. 383, which overrules former decisions upon this question, and declares the doctrine that when trust money becomes so mixed up with the trustees' individual funds that it is impossible to trace and identify it as entering into some specific property, the trust ceases; that the court will go as far as it can in thus tracing and following trust money, but when, as a matter of fact, it cannot be traced, the equitable right of the cestui que trust to follow it fails. The recent cases of Slater v. Oriental Mills (by the supreme court of Rhode Island) 27 Atl. 443, and Association v. Austin (supreme court of Alabama) 13 South. 908, are to the same effect. The case of Shields v. Thomas (supreme court of Mississippi) 14 South. 84, is similar to the present case in its facts. The sheriff of a county, without authority, deposited in a bank, which shortly afterwards failed, taxes collected by him, the officers of the bank knowing the character of the fund. The cash that came into the hands of the receiver of such bank was less than the amount of such fund, and it did not appear that the fund, or any part of it, came into the receiver's hands, either in its original form or as a part of the mass of the bank's assets. The court refused to make the payment of such fund out of the assets in the receiver's hands a charge upon such assets precedent to the claims of other creditors of the bank. These are all recent and well-considered cases, and each of them contains a large number of citations in support of the conclusion reached.

Among the cases against these authorities is that of San Diego Co. v. California Nat. Bank, 52 Fed. 59, also a recent case. In this case Judge Ross says:

"The ordinary creditors became such voluntarily. They deposited their money with the bank with their eyes open. But the money of the complainant was deposited by its officers and received by the bank, not only without the knowledge of the complainant, but contrary to law. To put the complainant on the same terms with the ordinary creditors is to make the former

share in a loss to which it did not voluntarily subject itself, and to give to the latter a share in money which never in equity became the property of the bank. This is certainly not just."

Notwithstanding the respect in which I hold the opinion of Judge Ross, I cannot adopt this view in the face of the cases that hold the other doctrine. The correctness of his conclusion as to the injustice of giving the general creditors of the bank a share in the money, which never in equity became the property of the bank, cannot be questioned. But this is not what happens in the cases under consideration. It does not appear that the money for distribution includes any part of that belonging to the involuntary creditor. If this did appear, the lien of such creditor would attach, and he would have his preference. The fact that the money of such creditor or cestui que trust cannot be traced to the fund sought to be charged is the reason that the preference is refused. If his money has been paid out, or has otherwise disappeared, it would not be just that he should take, to the exclusion of the general creditors of the bank, who are in no way responsible for the bank's delinquency, and whose deposits may comprise the entire fund which such creditor seeks to appropriate to his exclusive use. His so-called right of preference, in other words, cannot in justice extend to the property of others. The theory of preference does not apply in these cases. There is no preference by reason of an unlawful conversion. The so-called right to be preferred in the case of a wrongful conversion is a right of ownership,—a right of property; a right which lays hold of the property whether in its original or in a substituted form; a right which follows the property so long as it can be ascertained to be the same property or its product, and only does so because the property to be reached can be ascertained to be the same property or its product. When the means of ascertainment of the identity of property or proceeds fail, the right fails. I therefore conclude that neither the county of Multnomah nor the city of Portland is entitled to the preference claimed. The exceptions to the answers, so far as they relate to the questions decided, are overruled.